J-A19043-23

2023 PA Super 168

COLLEEN MOFFITT : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
CHRIS MILLER : No. 8 EDA 2023

Appeal from the Judgment Entered December 15, 2022
In the Court of Common Pleas of Chester County Civil Division at No(s):
2019-02299-TT

BEFORE:  BOWES, J., STABILE, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:            **FILED SEPTEMBER 18, 2023**

Colleen Moffitt (Moffitt) appeals from the judgment entered in the Court of Common Pleas of Chester County (trial court) following a jury trial in this personal injury action filed against Chris Miller (Miller) arising from a motor vehicle accident.  Moffitt challenges the trial court's evidentiary rulings including its allowance of testimony regarding her alcohol consumption before the accident, the court's decision not to issue several proposed jury instructions, as well as contending that the jury's verdict is against the weight of the evidence.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

# I.

## A.

The relevant facts and procedural history of this case are as follows.  On August 5, 2018, at 1:15 a.m., Miller's vehicle struck Moffitt as she attempted to cross East Lancaster Avenue (Route 30) in Downington on foot in the middle of the block as she walked home from a nearby bar.  On March 4, 2019, Moffitt filed a complaint asserting one count of negligence seeking to recover damages for injuries and lost wages she allegedly sustained as a result of the accident.

Emergency room records showed that Moffitt's blood alcohol content (BAC) was .313% at the time of the incident.  Prior to trial, motions in *in limine* were filed by both parties.  The trial court denied Moffitt's motion to exclude all references to her alcohol consumption but granted Miller's motion *in limine* to preclude testimony from Moffitt's liability expert concerning the presence of "unmarked crosswalks" at the location of the accident.

## B.

The case proceeded to a three-day trial on May 31, 2022, and the jury heard testimony from several witnesses including Moffitt; Miller; the police officer who responded to the scene, Officer Geoffrey Burkhart; Roy

Pietrinferni, the bartender from the tavern; and Miller's expert witness, Charles Dackis, M.D.[1]

Moffitt testified that at the time of the incident she resided with her two adult daughters and was working at a diner as a waitress earning about $16,000 per year. During the day leading up to the accident, Moffitt attended an afternoon wedding where she drank two to three beers, returned to her apartment, drank two shots of vodka with her daughter and later went to a bar located across the street and down one block from her apartment. Moffitt went to the bar dressed in the same clothes that she wore to the wedding and was scheduled to work the next morning at 7:00 a.m. Moffitt recounted that she drank one-and-a-half beers at the bar, was feeling "normal" when she left and did not have any problems walking or talking. (N.T. Trial, 5/31/22, at 67).

Moffit explained that she chose to cross Lancaster Avenue (Route 30) at the location she thought was the most well-lit area which was in the vicinity where Lancaster Avenue (Route 30) was intersected by Beech Street, a one-way street. However, Beech Street is the entrance to the Beech Street parking lot at Lancaster Avenue. No vehicles can enter Lancaster Avenue from Beech Street; they can only enter the parking lot from Lancaster Avenue and exit

---

[1] The witnesses testified in person and by deposition/pre-recorded trial testimony.

the parking lot onto Wood Alley. Lancaster Avenue has no stop sign or other traffic control device in Miller's direction of travel.

Moffitt stated that before she stepped off the curb, she looked to the left and to the right for oncoming traffic and that she did not see any vehicles approaching from either direction. As Moffitt crossed the street, she was struck by Miller's car and landed on the road. Emergency personnel responded to the scene and she was taken to the hospital.

Moffitt went on to testify that she sustained a fracture to her right leg necessitating surgery and cuts and bruises around her head. She stayed at her sister's home for about a week to recover and used a walker for a month. Moffitt attended follow up appointments with her physician as well as physical therapy treatment. Although she still experienced some pain, she stated she was working full-time as of her last doctor's appointment in November of 2018. Regarding her eyesight, Moffitt testified that she is blind in her right eye but is able to see through her left eye wearing glasses. Moffitt indicated that although she had vision issues before the collision, her ophthalmologist advised that her retina "totally shifted" after it and performed surgery. (*Id.* at 78). Moffitt averred that she was out of work for approximately two months and estimated her initial wage loss at $3,500.

Miller testified that as he was operating his motor vehicle eastbound on Route 30 on the night of the accident, he saw Moffitt on the sidewalk starting to cross the street. Miller did not slow down and continued to proceed forward

because he was unsure of what Moffitt was going to do. (**See id.** at 56-58). Miller explained that although he initially observed Moffitt on the sidewalk, he lost sight of her "because she disappeared . . . that's how fast it happened." (**Id.** at 58). The next time that he saw her, she was walking on the double yellow line.

Officer Burkhart testified that upon his arrival at the scene he noticed a strong odor of alcohol emanating from Moffitt's person and breath. She appeared very agitated and angry and "was yelling but not due to pain." (N.T. Trial, 6/02/22, at 5). Moffitt was cursing and directed negative comments towards him and the ambulance crew as they were trying to help her. Officer Burkhart recounted that Moffitt "crossed the road in a dark area and appeared to be extremely intoxicated when we arrived." (**Id.** at 8). He testified that there is no crosswalk where Moffitt walked across the street and the closest crosswalk is located about half a block away from where the accident occurred. Officer Burkhart's understanding is that the accident was caused "because [Moffitt] was intoxicated and walking in front of a car." (**Id.** at 11).

Roy Pietrinferni indicated that Moffitt drank one beer at the bar and purchased a six pack of beer to go. (**See** N.T. Deposition, 4/18/22, at 11). Pietrinferni testified that Moffitt exhibited no visible signs of intoxication and described her condition as "fine." (**Id.** at 12).

Dr. Dackis testified during *voir dire* that has been a psychiatrist for 40 years with a subspecialty in addiction, including alcohol and its effects. On

cross-examination during *voir dire*, Dr. Dackis indicated that he does not have a degree in toxicology and that he has not spoken at any conferences on that subject, although he has taught courses in pharmacology. Dr. Dackis explained that his expertise lies in assessing the impact of a person's blood alcohol level on their intoxication and impairment. (**See** N.T. Deposition, 2/28/22, at 16). The trial court allowed the jury to hear his testimony over objection by counsel for Moffitt.

Dr. Dackis testified that he reviewed Moffitt's hospital records which showed that her BAC was .313%, which is "a very, very elevated level, considering the fact that .08% is the legal level for drinking [while driving.] She was not acting normal. Her judgment was impaired. She was paranoid and she got into this accident." (**Id.** at 38-39). Dr. Dackis opined that Moffitt was intoxicated to a point that impaired her ability to safely walk home and that her impairment contributed to the accident.

**C.**

On June 2, 2022, the jury issued its verdict finding each party 50 percent causally negligent and awarding Moffitt a lump sum of $8,500 in damages. Moffitt filed a motion for post-trial relief which the trial court denied on November 22, 2022, after consideration of the parties' briefs and oral argument. In its opinion, the trial court stated its findings that it properly denied Moffitt's motion *in limine* to preclude evidence of her alcohol use on the day of the accident; Moffitt's challenge to Dr. Dackis' testimony is

meritless, as he was qualified to testify about her blood alcohol level and the effects of those levels on a person's behavior and conduct; it properly granted Miller's motion *in limine* to preclude testimony pertaining to "unmarked crosswalks"; the court's jury instructions were adequate and appropriate to the legal issues raised by the parties and it properly declined to give Moffitt's proposed non-standard charges; and the jury's decision to award damages totaling $8,500 is not against the weight of the evidence and was reasonable given the totality of the circumstances and all of the facts presented at trial. (**See** Trial Court Opinion, 11/22/22, at 2-3, 5-7).

Judgment was entered on the verdict on December 15, 2022. Moffitt timely appealed and she and the trial court complied with Rule 1925. **See** Pa.R.A.P. 1925(a)-(b).

## II.

### A.

Moffitt first contends the trial court erred by admitting evidence of her alcohol consumption before the accident.[2] Moffitt maintains that Pennsylvania courts have consistently precluded the mention of alcohol use absent evidence of unfitness to function at the time of an accident because such testimony is extremely prejudicial.

---

[2] In reviewing challenges to a trial court's decisions on motions *in limine* we apply an abuse of discretion standard of review. **See Coughlin**, **infra** at 403.

It is well-settled that a blood alcohol level alone may not be admitted for the purpose of proving intoxication. There must be other evidence showing the actor's conduct which suggests intoxication establishing an impairment function. *See*, *e.g.*, ***Billow v. Farmers Trust Co.***, 266 A.2d 92, 93 (Pa. 1970); ***Fisher v. Dye***, 125 A.2d 472 (Pa. 1956). In this case, the trial court applied ***Coughlin v. Massaquoi***, 170 A.3d 399 (Pa. 2017), our Supreme Court's most recent pronouncement on the issue.

*Coughlin* involved a personal injury action against a motorist who killed a pedestrian while he crossed the street and our Supreme Court considered the admissibility of evidence concerning the pedestrian's BAC, the same BAC as here — 313%. *See Coughlin*, *supra* at 400. After providing an extensive history of the law regarding the admission of what additional evidence was necessary to allow BAC levels, our Supreme Court stated that evidence of alcohol consumption is admissible in cases were careless or reckless driving is at issue and will not be viewed as "unfairly prejudicial" so long as it reasonably establishes a degree of intoxication or, as in the ***Coughlin*** situation, unfitness to walk across the street.

In arriving at that holding, it stated, "We **decline to adopt a bright-line rule** predicating admissibility on the existence of independent corroborating evidence of intoxication and, instead, hold that **the admissibility of BAC evidence is within the trial court's discretion based upon general rules governing the admissibility of evidence**, *see*

**Pa.R.E. 401–403**, **and the court's related assessment of whether the evidence establishes the pedestrian's unfitness to cross the street**." *Id.* at 400-401 (emphasis added).

Regarding the use of expert testimony to establish impairment based on a BAC, it went on to hold that where "an expert testifies thoroughly regarding the effects that a given BAC has on an individual's behavior and mental processes, and where that expert specifically opines that a particular BAC would render a pedestrian unfit to cross the street, we find the probative value of such evidence outweighs its potential for unfair prejudice." *Id.* at 409.

Moffitt contends that the *Coughlin* holding that expert testimony can provide sufficient corroborating evidence to show impairment is not controlling because there are witnesses to her behavior who established that she was not impaired. Moffitt also claims that *Coughlin* is inapplicable "because the Supreme Court intended to limit that holding to situations when there were no witnesses." In making that contention, Moffitt maintains that *Coughlin* emphasized the importance of witnesses in determining whether to permit other retrospective testimony, when it stated that:

> As this case illustrates, there will not always be witnesses to a car accident or to the parties' behavior or demeanor leading up to that accident. In such cases, evidence of a pedestrian's BAC, when combined with expert testimony explaining how the BAC correlates with certain behavior, is particularly valuable, as it is probative of intoxication and, perhaps, unfitness to cross a street. If we were to categorically exclude relevant BAC evidence from all cases which lack independent corroborating evidence of the pedestrian's intoxication, **we would be depriving juries of valuable insight, which, absurdly, would place pedestrians**

**—whose intoxication potentially contributed to the accident for which they are suing — at an unfair advantage simply because no one happened to witness the pedestrian's behavior prior to the accident or the accident itself**.

*Coughlin*, *supra* at 409 (emphasis supplied).

Contrary to Moffitt's claim, *Coughlin*'s allowance of expert testimony is not limited to when there are no witnesses or there are witnesses that stated that there was no impairment. In the above quoted statement, the Court did not limit the admission of such evidence only to circumstances where there are no witnesses, but was just commenting that it would be inequitable to exclude such probative evidence. Moffitt's argument is also in conflict with the Court's holding that expressly declined to adopt a bright line rule concerning the admissibility of evidence of alcohol consumption but, instead, stated that Rules of Evidence 401-403's[3] balancing framework is to be applied

---

[3] Pa R.E. 401 provides: "Whether evidence has a tendency to make a given fact more or less probable is to be determined by the court in the light of reason, experience, scientific principles and the other testimony offered in the case."

Pa R.E. 402 provides: "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible."

Pa.R.E. 403 provides: "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

on a case-by-case basis in determining whether to admit BAC into evidence, with the decision on admissibility left to the discretion of the trial court.

In this case, the trial court explained its rationale for allowing evidence of Moffitt's alcohol consumption before the accident as follows:

> There was expert testimony detailing Appellant's BAC and the significance of that result on Appellant's behavior. The testimony and evidence was open to cross-examination by Appellant or criticism by a counter-expert. Appellant, however, did not offer such testimony. Furthermore, evidence of intoxication may be relevant where there is corroborating evidence, including evidence of consumption, blood alcohol results, expert testimony, or testimony of Appellant's physical condition. At trial, there was testimony from Appellant, her daughter, and a bar owner regarding Appellant's behavior on the night of the accident which the jury heard and the credibility of which the jury was able to assess. This is simply not a case where there is only the suggestion or 'hint' of alcohol consumption or intoxication such that what might be considered limited or unreliable evidence should be excluded. It was not a close call as to whether Appellant may have been intoxicated on the night of the accident.

(Trial Ct. Op., 1/25/23, at 3-4).

We discern no abuse of discretion in the trial court's decision that evidence concerning Moffitt's alcohol consumption was relevant and probative to the issue of causation in this case. Moffitt's own testimony reflected that she began consuming alcohol during the afternoon leading up to the accident, that she continued drinking upon returning home, and then drank beer at a bar immediately before the incident. Dr. Dackis testified unequivocally that a .313% BAC level impaired her motor skills and sensory awareness. Given this

evidence, the trial court did not abuse its discretion in allowing BAC evidence to show that Moffitt was impaired when she crossed Lancaster Street.

**B.**

Moffitt also contends that Dr. Dackis was not qualified to testify regarding her alleged intoxication because he has no experience in toxicology.[4]  Pennsylvania Rule of Evidence 702 provides that an expert may testify if "scientific, technical or other specialized knowledge" beyond that possessed by a layperson will help the trier of fact to understand the evidence or to determine a fact in issue, "a witness qualified as an expert by knowledge, skill, experience, training or education may testify [thereto] in the form of an opinion or otherwise."  Pa.R.E. 702.  Thus, "[i]n Pennsylvania, the standard for qualification of an expert witness is a liberal one."  ***Wright***, ***supra*** at 976 (citation omitted).  "The test to be applied when qualifying a witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation." ***Id.*** (citation omitted).  "The witness need not possess all of the knowledge in a given field but must only possess more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience." ***Id.*** (citation omitted).  "If he does, he may testify

_____

[4] Decisions regarding admission of expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court and we may reverse only if we find an abuse of discretion or error of law.  ***See Wright v. Residence Inn by Marriott, Inc.***, 207 A.3d 970, 974 (Pa. Super. 2019).

and the weight to be given to such testimony is for the trier of fact to determine in view of the expert's particular credentials." *Id.* (citation omitted).

In this case, the trial court explained its decision relating to Dr. Dackis' qualifications as follows:

> Dr. Dackis testified that he has worked as an addiction specialist for 35 years. During *voir dire*, he discussed his clinical practice and experience treating those with alcohol use issues. He testified about his knowledge of alcohol abuse and his understanding of the effect of alcohol use on individuals. Dr. Dackis was not called as a toxicologist to decipher unknown blood alcohol levels or to interpret the results of lab tests. Plaintiff's blood levels were already determined by a toxicologist and noted in her medical records. Rather, Dr. Dackis was called to testify about the effects of such levels on a person's behavior and conduct.

(Trial Ct. Op., 11/22/22, at 3).

We agree with the trial court's conclusion that Dr. Dackis was qualified to testify regarding Moffitt's blood alcohol level and how that level likely impacted her conduct on the night of the accident including her ability to cross the road safely. Dr. Dackis' testimony reflects that he met the standard of "reasonable pretension to specialized knowledge" regarding the effects of alcohol use relative to Moffitt's consumption to assist the jury in its factfinding. *See Wright*, *supra* at 976. We also emphasize, as did the trial court, that Moffitt had the opportunity to counter Dr. Dackis' testimony by calling her own expert witness but did not do so.

- 13 -

**C.**

Moffitt next contends the trial court erred by precluding testimony that the location of the accident was an "unmarked crosswalk at an intersection." Moffitt claims that failure to permit this testimony created the prejudicial inference that she was "jaywalking." She contends that because she was crossing the road where Beech Street intersected Lancaster Avenue that was an unmarked crosswalk within the meaning of 75 Pa.C.S. § 102,[5] which should be considered in conjunction with 75 Pa.C.S. 3542(a) which states that "[w]hen traffic-control signals are not in place or not in operation, the driver of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection." Moffitt goes on to contend that the trial court should have instructed the jury about the relative obligations of the parties when a pedestrian crosses the highway at an intersection. We disagree for two reasons.

_____

[5] The Vehicle Code defines the word "Crosswalk" as "(1) That part of a roadway **at an intersection** included within the connections of the lateral lines of the sidewalks on opposite sides of the highway, measured from the curbs or, in the absence of curbs, from the edges of the traversable roadway; and, in the absence of a sidewalk on one side of the roadway, that part of a roadway included within the extension of the lateral lines of the existing sidewalk[; or] (2) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface." 75 Pa.C.S. § 102 (emphasis added).

- 14 -

First, the evidence shows the location of the accident would not qualify as a crosswalk because there are no sidewalks on either side of Beech Street at this location that one could connect the lateral lines to the opposite side of Lancaster Avenue. Moreover, Officer Burkhart testified and Moffitt even admitted that there was no crosswalk on Lancaster Avenue where she crossed.

Second, the trial court explained that there was no need for this instruction because:

> This was not a case where a pedestrian crossed a roadway within a crosswalk marked or unmarked, and a driver failed to yield to such pedestrian . . . The question for the jury was whether given all of the circumstances, Defendant acted negligently in the operation of his vehicle and whether Plaintiff acted reasonably in how and when she crossed the street that night. The jury answered the question of whether Defendant was negligent in the operation of his vehicle on the night of the accident in the affirmative. The jury concluded that Defendant breached his duty of care.

> In her brief in support of her post-trial motion, Plaintiff cites to the comment following Pennsylvania Standard Suggested Jury Instructions 3.10 in support for the argument that it is proper to charge both parties with a duty of ordinary care under the circumstance. The court did so here. There was no suggestion by the court to the jury that Plaintiff did not have the right to cross the street. Rather, the jury was tasked with determining whether both parties acted reasonably in the circumstances leading up to the accident. Even if the area had been a marked crosswalk and the jury was so advised, if Plaintiff had acted unreasonably in deciding when to enter that crosswalk, she still could be found comparatively negligent. In this case, the jury concluded that both parties acted negligently on the night of the accident and apportioned that negligence equally.

(Trial Ct. Op., 11/22/22, at 6).

After review of the record, we discern no abuse of discretion in the trial court's decision to preclude Moffitt from constructing an argument that she was struck in an "unmarked crosswalk." The record shows that Moffitt was crossing Lancaster Avenue mid-block, outside of any crosswalk, marked or otherwise.

**D.**

Moffitt next maintains the trial court erred in failing to instruct the jury on multiple relevant issues which, when viewed in the context of the trial court's decision to admit testimony relating to her intoxication and refusal to permit the crosswalk evidence, resulted in jury confusion during deliberations. (**See** Moffitt's Brief, at 27-31 (listing 11 proposed jury instructions)).[6] Moffitt

---

[6] The trial court declined to instruct the jury about:

- Negligence *per se*

- Violation of Section 3362 of the Motor Vehicle Code (Speeding)

- Violating of Section 3361 of the Motor Vehicle Code (Assured Clear Distance Rule)

- Intoxication (Plaintiff's Proposed Jury Instructions #22, #23, #24)

- Instructions regarding pedestrians in the roadway (Plaintiff's Proposed First Jury Instructions #32)

- Defendant Driver's Duty of Care in Regard to Pedestrians (Plaintiff's Proposed Jury Instructions #35 and #36)

*(Footnote Continued Next Page)*

reiterates her argument that the trial court should have instructed the jury as to the parties' respective obligations at an unmarked crosswalk and maintains that she is entitled to a new trial. (*See id.* at 31).[7]

We begin by observing that the purpose of a jury charge is to clarify the legal principles at issue and guide the jury in its deliberations. ***See Rittenhouse v. Hanks***, 777 A.2d 1113, 1118 (Pa. Super. 2001). Additionally, "the trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal." ***Amato***, ***supra*** at 621 (citation omitted). "[A] charge will be found adequate unless

_____

• Defendant's Failure to Warn Plaintiff (Plaintiff's Proposed Jury Instruction #41)

• Duty of Motorist When Approaching an Intersection (Plaintiff's Proposed Supplemental Jury Instruction #3)

• Jury Instruction regarding Pedestrian in a Place of Danger (Plaintiff's Proposed Supplemental Jury Instruction #4)

• Duty of Defendant to have his vehicle under control as part of the instruction on the "Assured Clear Distance Rule" (Plaintiff's Proposed Third Supplemental Jury Instruction 1)

• Failure to See Pedestrian in his Path (Plaintiff's Proposed Third Supplemental Jury Instruction 4)

[7] "On appeal, this Court examines jury instructions to determine whether the trial court abused its discretion or offered an inaccurate statement of law controlling the outcome of the case." ***Amato v. Bell & Gossett***, 116 A.3d 607, 621 (Pa. Super. 2015) (citation omitted). "Consequently, the trial court has wide discretion in fashioning jury instructions." ***Id.*** (citation omitted).

the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission which amounts to fundamental error." ***Ruff v. York Hosp.***, 257 A.3d 43, 56 (Pa. Super. 2021), *appeal denied*, 266 A.3d 1064 (Pa. 2021).

In this case, the Court declined to give 11 of Moffitt's proposed charges on the basis of being unwarranted, explaining that it:

> . . . declined to give any non-standard, or what the court often refers to as 'self-created,' jury instructions proposed by either party. It advised the parties that it would give the standard jury instructions regarding negligence, factual cause, comparative negligence, and recoverable damages. The standard jury instructions provided by the court adequately, accurately, and clearly stated the law. There also was no prejudice suffered by Plaintiff for the court's omitted charges.
>
> \* \* \*
>
> The jury instructions provided by the court covered the legal issues raised in Plaintiff's proposed charges, namely that Plaintiff's conduct was to be evaluated by the jury and included not only her duty of care but analysis of her actions as it relates to the issue of causation—all of which was then broken out for the jury in separate interrogatories on the verdict slip. Plaintiff has failed to demonstrate in what way the trial court's charges were inadequate or erroneous or what prejudice was suffered.

(Trial Ct. Op., 11/22/22, at 6).

We discern no abuse of discretion or error of law in the trial court's decision not to instruct the jury on nearly a dozen non-standard charges in this case where the complaint included a single count of negligence. The trial court's instructions fully and accurately stated the law, and Moffitt's argument

to the contrary ignores the fact that the jury **did find** Miller partially negligent. Moffitt's third issue does not merit relief.

## E.

Last, Moffitt contends that the jury's verdict was inconsistent with the evidence and shocks the conscience to a degree necessitating a new trial. Moffitt maintains the jury's award is inadequate given the severity of her injuries, fails to compensate her for non-economic pain and suffering, and is against the weight of the evidence.[8]

---

[8]

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the [factfinder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination

*(Footnote Continued Next Page)*

- 19 -

"The amount of a jury verdict will rarely be held inadequate on appeal."

***Dawson v. Fowler***, 558 A.2d 565, 567 (Pa. Super. 1989). "Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more. A reversal based on the inadequacy of a verdict is appropriate only where 'injustice of the verdict stands forth like a beacon.'" ***Davis v. Mullen***, 773 A.2d 764, 766 (Pa. 2001) (citation omitted). Moreover, "a jury verdict is set aside for inadequacy when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." ***Kiser v. Schulte***, 648 A.2d 1, 4 (Pa. 1994) (citing ***Elza v. Chovan***, 152 A.2d 238 (Pa. 1959)). So long as the verdict bears a reasonable resemblance to the damages proved, it is not the function of the court to substitute its judgment for that of the jury. ***See Epstein v. Saul Ewing, LLP***, 7 A.3d 303, 315 (Pa. Super. 2010).

In this case, the trial court determined after observing the demeanor of the witnesses, listening to the content of their testimony and assessing their

_____

that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Ruff***, ***supra*** at 49 (citation omitted).

credibility, that the jury's verdict was not so contrary to the evidence to shock one's sense of justice. It explained:

> This is not a case where a jury has awarded a plaintiff zero dollars after having found a defendant negligent. As Plaintiff concedes, her medical bills totaled $7,940. Those bills, however, did not differentiate between any treatment of her leg injury and treatment of the right eye. There also was much questioning during the trial as to what may have caused the eye injury. Similarly, although there was testimony from Plaintiff regarding an alleged wage loss of approximately $3,500, there was no documentary evidence to support that claim. The jury heard testimony that her wage loss claim was based upon her position as a server at a restaurant. The jury reasonably could have concluded that Plaintiff's testimony was not reliable on this issue. Given the totality of circumstances and all of the facts as presented at trial, the jury's verdict on damages does not shock the conscience and may be considered reasonable.

(Trial Ct. Op., 11/22/22, at 6).

As the trial court found, the jury award could have been calculated in any number of ways based on its discounting or accepting of evidence regarding those damages. The verdict sheet did not contain questions requiring the jury to provide each element of damages in its total award. Rather, as fact-finder, it was tasked with assessing the credibility of the witnesses to calculate the total amount of damages. Although this may not be the result that Moffitt had hoped, the verdict does not shock one's sense of justice.

Accordingly, for the foregoing reasons, we affirm the December 15, 2022 judgment entered on the jury's verdict.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/18/2023