J-A16006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ALLEN ROBERT JOHNSON | : | |
| Appellant | : | No. 139 WDA 2023 |

Appeal from the Judgment of Sentence Entered October 17, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0009154-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ALLEN ROBERT JOHNSON | : | |
| Appellant | : | No. 420 WDA 2023 |

Appeal from the Judgment of Sentence Entered February 21, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000525-2022

BEFORE:  KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.:　　　　　**FILED: August 13, 2024**

Allen Robert Johnson[1] appeals from the judgment of sentence entered

after he was convicted in separate trials of persons not to possess firearms

---

[1] At times, the appellant in this matter stated that his name is Johnson Allen Robert.  N.T., Sentencing, 10/17/22, at 5–9, 12–16; N.T., Trial, 1/23/23–1/26/23, at 145.  We refer to him as Johnson throughout this decision.

and carrying a firearm without a license, as well as other offenses.[2] He raises issues about suppression, the sufficiency of the evidence, and jury instructions. We affirm.

Police charged Johnson with the above offenses after finding a gun in the glove compartment of the car Johnson was driving on October 26, 2020. Johnson moved to sever the charge of persons not to possess firearms from the other charges for trial. The trial court granted severance.

Johnson moved to suppress evidence, including the gun. The trial court held a suppression hearing on January 10, 2022. The Commonwealth presented testimony from two police officers. On the record, the trial court provided its findings about Johnson's actions before he was stopped:

> So [Johnson] comes down Collier Street. The officers see [] him. He doesn't use his turn signal going into traffic. He goes up Kelly Street. He makes the left onto . . . Hale without a turn signal. He makes a right onto Bennett without a turn signal. . . .

> And there should be a light there. He doesn't use his turn signal. He goes up to the next intersection, which I believe would be Braddock. There is a stoplight there. Let's assume it's green. He still doesn't stop. He goes through that intersection and goes up to the next intersection, which would be Brush Street. He doesn't stop at that intersection. There's another intersection. . . . [T]he next intersection is Oakwood. He doesn't stop there. Then he goes up Bennett, [past] the beer distributor, [past] the school. He doesn't stop there.

---

[2] 18 Pa.C.S.A. §§ 6105(a)(1) (person not to possess a firearm), 6106(a)(1) (carrying a firearm without a license); 35 P.S. § 780-113(a)(31) (possession of a small amount of marihuana); 75 Pa.C.S.A. §§ 3323(b) (duties at stop signs, two counts); 3334(b) (signals on turning and starting, two counts)

[The officers activated emergency lights and sirens while following Johnson on Bennett Street. Trial Court Opinion, 8/2/23, at 3.]

He changes lanes and he goes through the light and he continues. There is another street on the right he doesn't stop at and goes through another light. He continues. There is a senior citizen high rise with a parking lot. He doesn't pull over there. There is a restaurant next door to it. He doesn't pull over to the restaurant, and he continues to drive through yet another stoplight and continues to make a turn and go to East Hills. There's a Jehovah's Witness Kingdom Hall right there on the side of the road. There is a parking lot there. He doesn't pull over there. He keeps going up to the next light which is the BP gas station where he finally pulls over.

N.T., Suppression,[3] 1/10/22, at 56–58.

After the parties provided relevant case law, the trial court further stated its factual findings about the circumstances of the search of Johnson and the glove compartment.

When the officers pulled into the gas station, they noticed that [Johnson] was reaching or leaning all the way over the driver seat going to the passenger seat. The officer testified clearly that he wasn't certain if Mr. Johnson was attempting to conceal something on the other side of the car, if he reached for the glove box.

The officer also ran Mr. Johnson's record and determined that Mr. Johnson had been arrested [for robbery]. Based upon that, he then attempts to interact with Mr. Johnson who is, according to the officer, is belligerent. He is screaming. He's yelling. He's very irrational. The officer's trying to calm him down repeatedly. Tries to calm him down. They ask him to step out of the car.

N.T., Proceeding, 1/18/22, at 7–9.

The trial court later articulated findings of fact about Johnson's conduct during the traffic stop:

---

[3] The transcript incorrectly labels this proceeding as a Non-Jury Trial.

- 3 -

After [Johnson] drove away from the police and failed to pull over, he pulled into a gas station. He was observed "leaning his body over toward the right of, like, the vehicle area." He was non-compliant, not following police directions and was observed to be speaking with someone over the FaceTime app on his phone. He did not possess a valid driver's license. Police observed marijuana in plain view. When [Johnson] got out of the car and was escorted to the police vehicle, marijuana was recovered from the floorboard, a scale was recovered from the center console and a firearm was recovered from the glove compartment.

Trial Court Opinion, 8/2/23, at 6 (record citations omitted).

The trial court denied Johnson's motion to suppress. The court placed its conclusions of law on the record:

I also find that there was probable cause to initiate a traffic stop. There was testimony [Johnson] ran several stop signs. He didn't use his turn signal. And I believe he ran a stop light as well. There's probable cause to stop the []car, and upon stopping the car, they had reasonable suspicion to justify a protective sweep, based upon the totality of the circumstances . . . .

N.T., Proceeding, 1/18/22, at 14.

Johnson proceeded to two jury trials, first on the charge of firearms not to be carried without a license (and other offenses), and second on the charge of persons not to possess firearms. At both trials, police testified that they retrieved a loaded handgun from the glove compartment, which was warm to the touch and which had "condensation that appeared to be from sweat" on the holster. N.T., Trial, 7/14/22–7/21/22 (Trial 1), at 90; **accord** N.T., Trial, 1/23/23–1/26/23 (Trial 2), at 118. The officers testified that Johnson stated that the gun was "in a trust." Johnson explained the trust in his second trial:

So, we have a trust, me and my wife. She's a trustee, and I'm a trustee. I'm a grantor and a grantee, so, therefore, things are in the trust that belong in the trust. We own nothing but control

- 4 -

everything. That's what a trust does, protects the assets of an individual.

N.T., Trial 2, at 150.

In both trials, the trial court denied Johnson's request to instruct the jury that, to prove constructive possession, the Commonwealth had to prove that Johnson was aware that the gun existed. In the first trial, the trial court instructed the jury on the elements of carrying a firearm without a license but did not charge on constructive possession of the gun. N.T., Trial 1, at 285–86. Over Johnson's objection, the trial court also instructed the jury on flight as consciousness of guilt. *Id.* at 232–36 (objection), 289–90 (instruction).

In the second trial, the trial court instructed the jury on the elements of persons not to possess firearms and added a portion of the suggested standard instruction on constructive possession:

> For a person to possess a firearm, he must have the intent to control, and the power to control the firearm.
>
> Possession: A person does not possess an item merely because he is aware of the presence and nature of the item or because he is physically close to it. Although proof of such facts may be evidence tending to show possession, such facts do not of themselves establish the necessary intent and power to control. Possession means -- first, what it means, is ordinary usage. Someone is knowingly holding, carrying, or otherwise directly controlling the possession of an item.
>
> A person can be guilty of possessing an item even when he is not holding it, touching it, or in the same area as the item. That type of possession is what the law calls constructive possession. For there to be constructive possession, it must be proved, beyond a reasonable doubt, that the individual had both the intent to control the item and the power to control the item.
>
> In determining whether or not the defendant had possession of an item, you should consider evidence of all facts and circumstances

that may shed light on the question of whether the defendant had any intent to control, and the power to control that item.

Two or more persons may have joint possession of an item provided each has the intent to exercise joint control over that item, and that each has the power to control. Each of the joint possessors is regarded as having possession of those items for purposes of criminal law.

N.T., Trial 2, at 232–33; *cf.* Pa. SSJI (Crim), § 16.02(b)A (3d ed. 2019 Supp.).

The juries found Johnson guilty of the offenses above. For carrying a firearm without a license, the trial court sentenced Johnson to three to six years of imprisonment followed by one year of probation. For persons not to possess a firearm, the trial court sentenced Johnson to four and a half to nine years of imprisonment, concurrent. Johnson received a sentence of no further penalty for his remaining convictions.

Johnson timely appealed. Johnson and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Johnson presents five issues for review:

1. Whether the lower court erred by not making findings of fact and conclusions of law as mandated by Rule of Criminal Procedure 581(I)?

2. Whether the lower court erred in denying the motion to suppress?

3. Whether the evidence of record was sufficient to support a verdict of firearm not to be carried without a license?

4. Whether the evidence of record was sufficient to support a verdict of a person not to possess a firearm?

5. Whether the lower court erred in refusing proposed instructions of [Johnson's] counsel?

Johnson's Brief at 8–9 (reordered, capitalization omitted).

We start with the suppression issues. "When reviewing the denial of a suppression motion, this Court reviews only the suppression hearing record, and not the evidence elicited at trial. Where the record supports the suppression court's factual findings, we are bound by those findings and may reverse only if the court's legal conclusions are erroneous." **Commonwealth v. Peak**, 230 A.3d 1220, 1224 (Pa. Super. 2020) (quoting **Commonwealth v. Frein**, 206 A.3d 1049, 1064 (Pa. 2019)).

Johnson first challenges the trial court's failure to articulate its findings of fact and conclusions of law before denying suppression.

The rule is clear:

> At the conclusion of the [suppression] hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought.

Pa.R.Crim.P. 581(I).

Rule 581(I) sets an "unambiguous mandate" that a suppression court enter findings of fact and conclusions of law, which is essential to review by an appellate court. **Commonwealth v. Sharaif**, 205 A.3d 1286, 1289 (Pa. Super. 2019) (quoting **Commonwealth v. Millner**, 888 A.2d 680, 689 (Pa. 2005)). Where the lack of factual findings hinders appellate review, this Court will remand for compliance with the rule. **E.g.**, **id.** at 1290.

Further, a trial court's Rule 1925(a) opinion, entered after the filing of a notice of appeal, "is no substitute for the failure to make findings of fact and conclusions of law on the record at the conclusion of a suppression hearing."

- 7 -

*Commonwealth v. Grundza*, 819 A.2d 66, 68 n.1 (Pa. Super. 2003). Nonetheless, an appellate court may review a suppression ruling based on factual findings articulated in a Rule 1925(a) opinion. *See Commonwealth v. Rivera*, 311 A.3d 1160, 1162 n.2 (Pa. Super. 2024).

Here, the trial court stated its factual findings on the record at the suppression hearing and at the next proceeding. N.T., 1/10/22, at 56–58; N.T., 1/18/22, at 6–9. The court announced its denial of suppression and articulated conclusions of law. N.T., 1/18/22, at 14. Rule 581(I) does not prohibit a trial court from entering its findings of fact orally. Moreover, to the extent that the trial court failed to enter findings about what happened after Johnson stopped driving, the court's Rule 1925(a) opinion provides a factual basis for review. We therefore deny Johnson's request to remand for the trial court to enter more findings of fact and conclusions of law.

Johnson next challenges the denial of his motion to suppress evidence. He argues that the police searched the glove compartment without a warrant, and no exception to the search warrant requirement applied. Specifically, he contends that there were no safety concerns because he was already in police custody when the police searched the car.

The United States and Pennsylvania Constitutions generally prohibit warrantless searches and seizures. U.S. Const. amend. IV; Pa. Const. Art. I § 8. Relevant here are two related exceptions to the warrant requirement. First, as the trial court reasoned, police may conduct a search incident to an arrest "if it is substantially contemporaneous with the arrest and confined to

the immediate vicinity of the arrest." *Commonwealth v. Wright*, 742 A.2d 661, 665 (Pa. 1999) (quoting *Shipley v. California*, 395 U.S. 818, 819 (1969)). Second, an officer may conduct a protective search for weapons if the officer reasonably believes a suspect to be armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). This applies equally to the vehicle context:

> The search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. The issue is whether a reasonably prudent man would be warranted in the belief that his safety or that of others was in danger.

*Commonwealth v. Morris*, 644 A.2d 721, 723 (Pa. 1994) (quoting *Michigan v. Long*, 463 U.S. 1032, 1049–50 (1983)) (brackets, quotation marks, and citations omitted). A protective sweep is limited in scope (to where a suspect could grab a weapon) and requires less cause (a reasonable suspicion that a suspect is armed and dangerous), compared to "a full interior vehicle search" that requires probable cause and exigent circumstances. *Commonwealth v. Muhammad*, 289 A.3d 1078, 1085 n.2 (Pa. Super. 2023); *see Commonwealth v. Alexander*, 243 A.3d 177, 207–08 (Pa. 2020).

Notably, police may conduct a protective search of a car when a suspect is outside of the car. A "dangerous" suspect can continue to "pose[] a danger if he [is] permitted to reenter the vehicle." *Muhammad*, 289 A.3d at 1089. Officers are therefore justified to check for a weapon in areas that the suspect "would have immediate control of and could contain a weapon." *Id.*

- 9 -

Here, the police were justified in conducting a protective sweep of the areas of the car "in which a weapon may be placed or hidden," including the glove compartment. *Long*, 463 U.S. at 1049. It was reasonable to suspect that Johnson, who refused to pull over for several blocks, had leaned to the right in his car, and when he finally stopped, behaved belligerently, was dangerous and could reach for a weapon in the unfolding situation. The trial court found—and the record supports—that the police conducted a protective sweep of the car at the same time that Johnson was being taken from the car, patted down, and escorted to the police vehicle. Trial Court Opinion, 8/2/23, at 6; N.T., Suppression, 1/10/22, at 32. Even if Johnson was handcuffed, a cautious officer could still ensure that he would be unable to break free to recover a gun in the car. *Cf. Muhammad*, 289 A.3d at 1089 (recognizing that an officer remains vulnerable at close range before an arrest is completed). Thus, the trial court properly denied suppression.

Johnson next challenges the sufficiency of the evidence to sustain his firearms convictions. For firearms not to be carried without a license (the first trial), Johnson argues that he lacked constructive possession of the gun. He contends he was not aware of the gun and looked at his lap only for a Zoom call. For persons not to possess a firearm (the second trial), Johnson makes a similar argument, adding that there was no evidence the gun was operable.[4]

_____

[4] We resolve the latter claim by noting that Section 6105 does not require proof of operability. *Commonwealth v. Thomas*, 988 A.2d 669, 672 (Pa.
*(Footnote Continued Next Page)*

The trial court determined that the evidence was sufficient to show that Johnson constructively possessed the gun,[5] which the court reasoned was a reasonable inference from the facts at trial. Alternatively, the Commonwealth argues that in both trials, it established that Johnson had actual possession of the gun, and no analysis of constructive possession is needed.

We review sufficiency under the following standard:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the

_____

Super. 2009); *see Commonwealth v. Santana*, 311 A.3d 562 (Table), 2023 WL 8434473, at *4 (Pa. Super. 2023) (non-precedential decision) (comparing the applicable definitions of firearm under Sections 6105 and 6106).

[5] The trial court's analysis was limited to Johnson's Section 6015 conviction, the only charge for which Johnson claimed the evidence was insufficient in his Rule 1925(b) statement. Johnson has not waived his claim about his Section 6106 conviction, however, because this Court found the trial court's order directing him to file a concise statement of errors to be defective. Order, 9/25/23.

- 11 -

evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

**Commonwealth v. Franklin**, 69 A.3d 719, 722–23 (Pa. Super. 2013) (citations, brackets, and quotation marks omitted).

Both convictions at issue require proof that Johnson possessed a firearm under certain circumstances. "[With an exception that does not apply here,] any person who carries a firearm in any vehicle . . . without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S.A. § 6106(a)(1). "A person . . . whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture . . . a firearm in this Commonwealth." 18 Pa.C.S.A. § 6105(a)(1); **see id.** § 6105(c)(2) (including being convicted of certain drug crimes); 35 P.S. § 780-113(a)(30) (Johnson's conviction for possession with intent to deliver).

When possession is an element of an offense, the Commonwealth may prove physical "possession, constructive possession, or joint constructive possession." **Commonwealth v. Wright**, 255 A.3d 542, 552–53 (Pa. Super. 2021) (quoting **Commonwealth v. Parrish**, 191 A.3d 31, 36 (Pa. Super. 2018)). We have explained constructive possession, by which a person can possess an item even if he is not holding it:

Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the

- 12 -

defendant has the power to control the contraband and the intent to exercise that control. [C]onstructive possession may be established by the totality of the circumstances.

[A]s with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

[A] defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items. Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession.

If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. It is well settled that facts giving rise to mere association, suspicion or conjecture, will not make out a case of constructive possession.

*Id.* at 553 (quoting *Parrish*, 191 A.3d at 36–37) (brackets, quotation marks, and citations omitted).

Here, the evidence was sufficient for both juries to find that Johnson constructively possessed the gun in the glove compartment of the car he was driving. Johnson's spontaneous statement that the gun was "in a trust" supports the inference that he intended to exercise control over the gun. N.T., Trial 1, at 160, 215, 221; N.T., Trial 2, at 94, 150–53. The gun being warm, with sweat-like condensation, supports a finding that Johnson had the ability to control it (as well as the knowledge that the gun was in the glove compartment). N.T., Trial 1, at 90, 119; N.T., Trial 2, at 118. The juries were free to reject Johnson's alternative explanations (that the gun was warm

- 13 -

because of the car, that he was looking only at a Zoom screen). The totality of the circumstances, including the events leading up to the stop and Johnson reaching toward the glove compartment when he pulled over, lends credence to a finding that Johnson constructively possessed the gun. For these issues, we need not consider the Commonwealth's alternative theory that it proved actual possession in either trial. Johnson's sufficiency issues fail.

Johnson next challenges the jury instructions given in both trials. He argues the trial court should have instructed on constructive possession in the first trial, and in the second trial should have added that the Commonwealth must prove that the defendant was aware that the gun existed. Johnson also contends the trial court should not have given an instruction on consciousness of guilt in the first trial.[6]

We review the denial of a requested jury instruction to determine whether the trial court "abused its discretion or committed an error of law." *Commonwealth v. Green*, 273 A.3d 1080, 1084 (Pa. Super. 2022) (citation omitted). A trial court abuses its discretion when it "overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Patterson*, 180 A.3d 1217, 1227 (Pa. Super. 2018). "Further, the trial court is not required to give every charge that is requested by the parties and its refusal

---

[6] The Commonwealth raises a threshold issue of Johnson's failure to indicate where in the record he preserved his jury instruction challenges. We decline to find waiver given the history of this case.

- 14 -

to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal." **Green**, 273 A.3d at 1084 (brackets, internal quotation marks, and citation omitted). A "trial court has wide discretion in fashioning jury instructions." **Moffitt v. Miller**, 302 A.3d 1219, 1229 n.7 (Pa. Super. 2023).

In the first trial, the trial court explained that it would not instruct the jury on constructive possession because Johnson was the only person in the car. N.T., Trial 1, at 230–31. Given the evidence that the gun was warm and had condensation after Johnson was the only person in the car, *id.* at 90, we find that the trial court's instruction was appropriate. Likewise, we discern no abuse of discretion in instructing the jury on flight as consciousness of guilt. Contrary to Johnson's reasoning, this charge informed the jury that it was not required to find that he drove away because he knew he was guilty of any crime.

> Additionally, there was evidence, including the testimony of [Sergeant] Maddox that . . . shows that the Defendant fled from the Police and did not immediately pull over his vehicle when he was instructed to do so.
>
> **The credibility, weight and effect of this evidence is for you to decide.**
>
> Generally speaking, when a crime has been committed and a person thinks that he or she may be accused of committing it and he or she flees to conceal himself or herself, such flight or concealment is a circumstance to prove that the person is conscious[] of guilt.
>
> **Such flight or concealment does not necessarily show consciousness of guilt in every case.**

- 15 -

**A person may flee or hide for some other motive, and [may] do so even though innocent.**

Whether the evidence of flight or concealment in this case should be looked at attempting to prove guilt depends on the facts and circumstances of this case, and especially on the motive [that] may have [prompted the] flight or concealment.

You may not find the Defendant guilty solely on the basis of evidence of flight or concealment.

*Id.* at 289–90 (emphasis added).

In the second trial, the trial court instructed the jury on constructive possession of the gun but denied Johnson's requested language to require proof that he "had knowledge of the existence and location of the" gun. *Commonwealth v. Thompson*, 428 A.2d 223, 224 (Pa. Super. 1981); *accord Wright*, 255 A.3d at 553.[7] Here, too, the trial court did not abuse its discretion. Knowledge of the gun's existence and location is a "necessary pre-requisite of intent to control," and the trial court instructed the jury that intent to control was an element of constructive possession. *Thompson*, 428 A.2d at 224; N.T., Trial 2, at 232. Because the trial court accurately stated the law, it did not abuse its discretion by denying Johnson's requested instruction. Therefore, Johnson's jury instruction issues fail.

Judgment of sentence affirmed.

---

[7] Similar language is included in the standard instruction on possession. "For an individual to 'possess' [an item,] . . . the individual must be aware of the presence and nature of the [item]." Pa. SSJI (Crim), § 16.02(b)A.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

8/13/2024