J-A03012-25          2025 PA Super 126

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                        :         PENNSYLVANIA
                                          :

             v.                    :

SETH JASON REICH             :

          Appellant        :    No. 670 EDA 2024

Appeal from the Judgment of Sentence Entered November 20, 2023
In the Court of Common Pleas of Chester County
Criminal Division at No.: CP-15-CR-0003338-2021

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

OPINION BY STABILE, J.:                **FILED JUNE 24, 2025**

Seth Jason Reich, Appellant, was found guilty after a jury trial of committing sexual offenses against the minor victim, M.R. Appellant was convicted of sexual assault (18 Pa.C.S.A. § 3124.1); indecent assault (18 Pa.C.S.A. § 3126(a)(1)); simple assault (18 Pa.C.S.A. § 2701(a)(1); and selling or furnishing alcohol to a minor (18 Pa.C.S.A. § 6310.1)).[1] He was sentenced by the Court of Common Pleas of Chester County (trial court) to an aggregate prison term of three to 10 years. In this appeal, Appellant contends that he is entitled to a new trial because the trial court erred in excluding evidence of the victim's consent, limiting the scope of the defense's closing statement, and admitting into evidence statements of Appellant obtained by

---

[1] In a separate case that was consolidated for trial purposes with the present matter, Appellant was charged with, and acquitted of, additional counts relating to a second alleged victim, E.A. The offenses were institutional sexual assault; corruption of minors, and unlawful contact with a minor.

police in violation of his ***Miranda*** rights. Finding no merit in these claims, we affirm.

In 2019, Appellant was 38 years old and employed as a high school drama teacher. Over the summer of that year, Appellant ran a theater program, and he hired M.R. as a stage manager. M.R. had recently graduated from the high school where Appellant was employed; she was also a good friend of E.A., another former student at the same high school who performed as an actress in one of the plays produced by the summer theater program. M.R. was aware that, for the previous few months, Appellant and E.A. had been romantically involved.

As the end of the summer neared, Appellant, M.R., and E.A. began planning a going-away party for M.R., who would soon be returning to college. On August 25, 2019, E.A. created a group chat on the smartphone application, "WhatsApp," so that she, M.R., and Appellant could text each other and plan their party. Over the next two days, the group used WhatsApp to not only discuss the party, but also to discuss several sexually explicit topics. This included the filming of a pornographic film, and M.R. stating that Appellant could have sex with M.R. and E.A. at the hotel where the three would meet and spend the night.

The group chats continued until minutes before Appellant, M.R., and E.A. met at the designated hotel room, at about 8:00 p.m., on August 27, 2019. It is undisputed that after they arrived, the three drank large quantities of liquor and engaged in various forms of sexual contact with each other.

For the next two days, Appellant, M.R., and E.A. continued texting each other on the WhatsApp group chat. M.R. initially made light of what had happened during the party in the hotel room. But during the group's discussion of their sexual acts with each other, M.R. expressed regret over the incident, saying she had not consented to sex with Appellant, that she had blacked out due to alcohol consumption, and that she was traumatized.

However, in the same conversation, M.R. also wrote that they should meet for group sex again, that she wanted Appellant to engage in BDSM activities during a future sexual encounter, that she was annoyed Appellant and E.A. were together without her, and that the incident at the hotel was only a "medium mistake." N.T. Trial, 5/18/2023, at 149. Days later, after returning to her college, M.R. continued to exchange text messages with Appellant. They remained in contact for several months, and their communications were cordial.

Eventually, in 2021, M.R. reported the incident at the hotel to officials of the high school where Appellant was employed, as well as to police, alleging that she did not consent to intercourse with Appellant. E.A. corroborated M.R.'s account, while also alleging that her own sexual contact with Appellant had been non-consensual. She also turned over a copy of the group text messages to verify those claims. In statements to the police, E.A. denied that she and M.R. had ever been romantically involved with each other prior to their meeting with Appellant at the hotel on August 27, 2019.

As part of their investigation, detectives arranged for E.A. to make a recorded telephone call to Appellant on June 30, 2021. The two of them discussed their mutual regrets about having had a sexual relationship. Appellant repeatedly admitted fault for his treatment of E.A., stating that he had a "problem," and that he was "addicted" to his harmful conduct. ***See*** Commonwealth Exhibit 33, 5/19/2023, at p. 7.

In the conversation, E.A. confronted Appellant with the fact that he had supplied alcohol to both her and M.R. on the night in question. Appellant did not dispute E.A.'s allegation, and he instead acknowledged his role in intoxicating E.A. and M.R.:

> [Appellant]: Yeah, I know, I know oh God . . . It's just it's uh, I'm not making any excuses but I was coming so, so stupid. I, I, I f***ked up and I'm, and this not, I don't know, this is the first time that this has happened to me. I want to just confirm that and yes I know [M.R.] is part of this and that was, I don't know what was, what the f**k that was, I don't know what the f**k happened there and I was intoxicated, I, I shouldn't have . . .[.]

***Id***., at p.11.[2]

One day after that call, on July 1, 2021, Appellant was arrested and brought to a police station. He was informed that detectives wanted to question him about alleged offenses against E.A. An officer advised Appellant that he was free to remain silent and have an attorney present. Appellant then agreed to speak with Detective David Maurer about the timeline of his

---

[2] While the transcript of the phone call between Appellant and E.A. was not admitted at trial, it was made part of the certified record as "Commonwealth Exhibit 33" on May 19, 2023.

relationship with E.A., as one of the potential charges concerned whether he had any sexual contact with her while she was still a student. Once the questioning had been well under way, the detective broached the allegation that he had gotten M.R. intoxicated to the point where she could not consent to intercourse. **See** Commonwealth Exhibit 48, 5/19/2023, at 30.

Appellant was confused and caught off-guard by the accusation that he had raped M.R. He insisted that he was innocent of that crime, and that he "didn't commit a felony." **Id**. Appellant then stated that he refused to discuss the subject further, and the interview promptly ended. **See id**., at 31-32. The entire session was recorded by audio and video equipment, and the Commonwealth later sought to introduce the recording into evidence at trial. An excerpt of the relevant portion of the interview reads as follows:

> [Detective Maurer]: But I mean like, like, uh, you, and we still have to resolve an issue with [M.R.] in a hotel room and the tequila that night.
>
> [Appellant]: For under, allowing underage drinking.
>
> [Detective Maurer]: Well for uh you can't get somebody drunk to the point where they can't um defend themselves and have sex with them.
>
> [Appellant]: I didn't know that occurred.
>
> [Detective Maurer]: Even if they're uh an adult, eighteen. you can't do it to anyone.
>
> [Appellant]: I, I didn't know that that was, I didn't know that that had happened.
>
> [Detective Maurer]: And at the time [M.R.] was not twenty-one.

- 5 -

[Appellant]: Yes, that I know.

[Detective Maurer]: Ok. So, that, we haven't even gotten to that yet.

[Appellant]: Mmm-mmm.

[Detective Maurer]: So don't, don't say you're innocent and it's all her fault,

[Appellant]: No, no, no, I'm not, I'm not,

[Detective Maurer]: And,

[Appellant]: I'm not, lis[ten], look, I'm not saying I'm innocent. I'm saying I didn't commit a felony. That other event we can talk about another time or what, obviously we'll talk about it today, but like,

[Detective Maurer]: That's a felony too.

[Appellant]: I didn't,

[Detective Maurer]: That's like, that's called rape.

[Appellant]: I, I did not do that. I did not do, I, I don't know, I did not, I do not know what that, I, I didn't,

[Detective Maurer]: You were in the Clarion Hotel.

[Appellant]: No, no.

[Detective Maurer]: You bought a bottle of tequila.

[Appellant]: Stop, stop, stop, stop, stop. hold on, well can I just think for two seconds about what I'm trying to understand, I didn't know, like I didn't, how am I to kn[ow], I, I, it's . . . that one I won't talk about.

[Detective Maurer]: ok.

[Appellant]: That's something . . . I'm not talk, I'm not gonna talk about that. I'm not talking about that because I,

[Detective Maurer]: Well then I think we're done.

*Id*., at 30-32.

In two separate criminal cases, Appellant was charged with several offenses relating to E.A. and M.R., respectively. The two cases were consolidated for trial purposes. On March 21, 2022, Appellant filed an omnibus pre-trial motion, and an amended version was filed on June 24, 2022. In the amended motion, Appellant sought to suppress the statements he made to police regarding M.R. at his interview on July 1, 2021. The trial court held a hearing on the motion and then denied it in a written order, finding that Appellant's constitutional rights had not been violated during the detective's questions about the alleged offenses pertaining to M.R. *See* Trial Court Order, 8/22/2022; *see also* N.T. Suppression Hearing, 8/30/2022, at 55-56.

The trial court reasoned that Appellant knew or should have known that the questioning about his conduct toward E.A. would encompass Appellant's conduct toward M.R., as all three parties were present on the night in question, and the alleged offenses all took place during the same criminal episode. *See* N.T. Suppression Hearing, 8/30/2022, at 56. Moreover, the questioning ceased as soon as Appellant stated that he did not want to discuss M.R. *See id*.

On February 8, 2023, Appellant filed a motion *in limine* to admit evidence "pursuant to Pennsylvania's Rape Shield Statute, 18 Pa.C.S.A. § 3104." In all, Appellant had disclosed to the Commonwealth tens of thousands of pages of group text messages exchanged between Appellant, M.R., and

E.A. on the WhatsApp application. Of those, Appellant proffered in the motion that about 200 pages of text messages (the above-discussed messages exchanged from August 25 to August 29, 2019) could potentially contain inadmissible evidence of M.R. and E.A.'s prior sexual conduct, requiring partial redaction. In addition, Appellant sought to admit the testimony of Andres Bustillo Gallardo, a friend of M.R. and E.A. who had seen them kissing each other two weeks before the night in question, contrary to E.A.'s statement to Detective Maurer that she and M.R. had never been romantically involved until that point.[3]

Under the Rape Shield Statute, a defendant accused of a sex crime may not introduce evidence of a victim's prior sexual conduct; however, an exception to that general rule is that the defense may present "evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence." 18 Pa.C.S.A. § 3104(a).[4]

In his motion, Appellant stated in a footnote that he did not believe the WhatsApp messages fell under the purview of the Rape Shield Statute because

---

[3] In an interview with Detective Maurer on July 9, 2021, E.A. denied kissing M.R. or having a sexual relationship with her on any occasion prior to the hotel party on August 27, 2021.

[4] Courts also recognize that the Rape Shield Statute will not bar the admission of "evidence that negates directly the act of intercourse with which a defendant is charged, evidence demonstrating a witness' bias, or evidence that attacks credibility." **Commonwealth v. Largaespada**, 184 A.3d 1002, 1006-1007 (Pa. Super. 2018).

they did "not relate to [the victims'] prior sexual behavior." Defendant's Motion In Limine Seeking to Admit Evidence Pursuant to Pennsylvania's Rape Shield Statute, 18 Pa.C.S.A. § 3104, 2/8/2023, at 2 n.2. Appellant advised the trial court that the messages could nevertheless be admissible because they bore directly on "the events in question, the relationship between the parties, their respective expectations regarding whether they would engage in sexual activity together at the hotel, and whether [M.R.] did in fact consent to the sexual activity [with Appellant]." *Id*.

But to the extent that the Rape Shield Statute was implicated by the messages' reference to the victims' sexual activity prior to the incident, Appellant argued in the body of the motion that the messages were admissible under the statute's exception. *See id*., at 14-15. That is, he contended that the messages could be introduced because they related to the victims' sexual conduct with Appellant, the victims' consent was at issue, and the messages were otherwise admissible pursuant to the rules of evidence. *See id*.

He stated further that he believed the messages were relevant under Pa.R.E. 401 because they constituted "direct evidence about the [victims'] and [Appellant's] state of mind in the days and hours leading up to the incident and are thus undeniably relevant on the issue of whether [M.R.] consented to sex and whether [Appellant reasonably believed she was a willing participant [in sexual acts with him]." *Id*.

At the conclusion of his written motion *in limine* to admit evidence pursuant to the Rape Shield Statute, Appellant requested the trial court to

either deem the proffered evidence to be admissible, or to hold an *in camera* hearing to determining whether the evidence was "admissible pursuant to the Rape Shield Law." ***Id***., at 18.[5]

At the first hearing on that motion, held on March 7, 2023, defense counsel stated that he was intending to admit about 200 pages of redacted WhatsApp text messages, while suggesting that the trial court should review them prior to trial to determine their admissibility. ***See*** N.T. Pre-trial Hearing, 3/7/2023, at 2-3. The Commonwealth responded that it would not object to the admission of relevant messages as long as they were redacted so as to comport with the Rape Shield Statute. ***See id***., at 6. Accordingly, the Commonwealth indicated that it would have "no objection" to Appellant's motion, as the subject redacted messages implicating the Rape Shield Statute were "permissible pursuant to the statute and they to go relevant points of cross-examination." ***Id***.

The trial court then advised the parties to convene after the hearing and decide if the admissibility of any such messages could be agreed upon:

> I think that what we could do here because the Commonwealth agrees that certain parts are relevant and are admissible, but I think the two of you can work together to identify which sections are relevant, and then if there are any sections that you're unable to reach an agreement on, then maybe those are the sections that need to come to me.

_____

[5] The text messages spanned from August 25 to August 29, 2019. The alleged sexual assault took place on August 27, 2019.

- 10 -

***Id***., at 9.

The parties followed the trial court's suggestion, and returned for a second hearing on Appellant's motion, held on March 24, 2023. At the outset, defense counsel suggested that the redacted messages had been reviewed by the Commonwealth and that it had agreed that those messages were relevant and admissible at trial. ***See*** N.T. Pre-Trial Hearing, 3/24/2023, at 13-14.

In response, the Commonwealth clarified that its stipulation on the admissibility of the messages was contingent on how the witnesses would testify during cross-examination:

> [Prosecutor]: I have reviewed the redactions of the 200 pages of group texts between the victims and [Appellant]. **I would agree that all of the material that is protected by rape shield has been redacted appropriately. As to whether they become admissible, I think that becomes an issue that we determine at trial.** I'm not necessarily saying I think [defense] counsel can use all 200 pages, unless they somehow become relevant during his questioning, but I don't object to them as currently redacted.
>
> * * * *
>
> [Trial Court]: I just want to look back at my notes because I might have misunderstood your position last time, [prosecutor]. I noted there was no objection and that they were permissible under the statute.
>
> [Prosecutor]: That [defense] counsel can use them. I'm not agreeing that we would admit a 200 page document into evidence, so that the jury could review it. I'm agreeing that, should they somehow become relevant, [and] he chose to use them, those messages that are used would then be admissible under rape shield, but I would not necessarily agree today that the jury would see all 200 pages of messages. I don't think that's an issue for today.

*Id*. (Emphasis added).

Defense counsel then argued that the texts were relevant and potentially admissible for impeachment purposes:

> [Defense counsel]: The WhatsApp chats [do not implicate the] rape shield [statute]. I brought that to the Court's attention and sought a pretrial ruling. **It is our position that apart from the redactions that could implicate rape shield, that we sought the redactions that could violate that particular statute, but <u>the WhatsApp redactions are impeachment</u>. <u>They are for inconsistent statements</u>.** Given the Commonwealth's position today, because I was under the same impression the [trial court] was, that I am going to be asking [the trial court] to review the entire now redacted document because we need a clear pretrial ruling on relevancy and admissibility.

*Id*., at 14-15 (emphasis added).

The Commonwealth and defense counsel then seemed to agree that the messages would only be relevant at trial if they could be shown to be inconsistent with a witness's testimony:

> [Defense counsel]: **All of this goes to impeachment and credibility of the individuals who provided – already have provided inconsistent statements to law enforcement in their interviews and in their preliminary hearing testimony sworn under oath.** So, I just don't want to get caught and then have to delay things substantially.
>
> [Trial Court]: So, I think I understand now is that because typically we have to wait for that inconsistency or that impeachment to happen. We have to wait for them to say something that's different.
>
> [Defense Counsel]: Sure.
>
> [Trial Court]: And typically, we won't consider that until that testimony has been given, but it's your position that the statements that have already been given as part of the

- 12 -

investigation and as part of their preliminary hearing testimony already implicates some of the documents?

[Defense counsel]: That's correct.

[Trial Court]: And that's why you would like them to be reviewed in advance?

[Defense counsel]: That's correct.

*Id*., at 16-17 (emphasis added).

The Commonwealth cautioned the trial court that in all, the defense had disclosed tens of thousands of additional text messages exchanged between Appellant, E.A., and M.R. *See id*., at 17. It seemed impractical to the Commonwealth that the trial court would have to review all of those messages prior to trial to determine whether they could potentially be relevant and admissible for impeachment purposes. *See id*., at 17-19. The Commonwealth reasoned that it would therefore be improper for the trial court to rule preemptively on whether any of the messages, prior to the witnesses' testimony, could all be admitted into evidence. *See id*., at 19.

The trial court inquired of defense counsel whether it was "asking that they all be read to the jury?" *Id*. Defense counsel answered definitively, "No. That is not what I'm asking." *Id*. What followed was a lengthy explanation of defense counsel's litigation strategy as to the scope and purpose of its motion *in limine*.

Essentially, defense counsel had produced about 31,000 total WhatsApp text messages to the Commonwealth, but only a fraction of those (about 200

pages' worth), potentially implicated the Rape Shield statute.  ***See id***., at 19-23.   Appellant's motion *in limine* was filed only to avoid delays in the proceedings every time the defense sought to impeach a witness with those specific messages during live trial testimony:

> So, the WhatsApp chats became subject of this motion because contained in them was information that could violate rape shield. That's why they are a focus of this particular motion, but the other [30,000 messages] didn't require a motion.

***Id***., at 22.

Significantly, defense counsel confirmed the understanding of the Commonwealth and the trial court that Appellant was attempting to establish the admissibility of the messages based on whether they could be used to impeach witnesses:

> **It is impeachment and admissible and relevant at trial.** That's why we need – at least on this issue for WhatsApp, I urge the Court to look at them, so at least you are familiar with the issues that are at play. **I agree that, you know, there has to be an alleged inconsistency on cross or direct before I can get to them, of course.** But I want to be able to get to them without taking a giant time out, going back and having this argument, you going in the back reading it, and then making a determination on the fly whether or not it's relevant[.] I'd much rather the Court have some background information. I'm not sure the Commonwealth would preclude the Court from that review.

***Id***., at 23 (emphases added).

The trial court's written order therefore corresponded with defense counsel's explanation.  The trial court ruled in the order that the "What's App messages may become relevant at trial and used pursuant to Rule 613 of the

Pennsylvania Rules of Evidence for impeachment and/or rehabilitation of a witness by both parties." Trial Court Order, 4/27/2023, at para. 4(A).[6]

It appears that the trial court did not at any point prior to trial make a ruling as to whether all 200 pages of redacted WhatsApp text messages could be admitted into evidence and published as an exhibit for the jury's consideration. Subsequently, defense counsel never sought any clarification from the trial court on that point. As to the proffered testimony of Gallardo, the trial court ruled that his observations of M.R. and E.A. kissing would be irrelevant and inadmissible under the Rape Shield Statute. *See id*., at para. 4(C); *see also* Trial Court 1925(a) Opinion, 5/21/2024, at 41-42.

The trial began on May 15, 2023. E.A. testified from May 15, 2023, to May 17, 2023. M.R. testified on May 18, 2023. Both witnesses were questioned at length by the Commonwealth and the defense regarding their interactions with Appellant at the relevant times. This included questioning about their WhatsApp group text thread, which was a feature of Appellant's defense. The two witnesses each admitted to having highly explicit and detailed conversations with Appellant about their plans to have group sex on the night in question. However, they both believed the conversations to be in

_____

[6] The 200 pages of redacted WhatsApp messages between Appellant, E.A., and M.R. were made part of the record as "Defendant's Exhibit 4" on May 17, 2023. The exhibit was used as a reference by defense counsel during the questioning of witnesses, and some of it was read into evidence, but the exhibit was not published for the jury's viewing.

jest, and not intended to be taken seriously, much less carried out. Defense counsel argued to the jury that the messages had in fact reflected M.R. and E.A.'s willingness to engage in sexual activity with Appellant.

As outlined above, Appellant was found guilty of several sex-related offenses relating to M.R.; he was acquitted of the charges relating to E.A. Appellant timely filed post-sentence motions, which were denied. He appealed, and in his brief, four issues have been raised for our consideration:

> 1. Did not the trial court err in excluding the WhatsApp group chat among the [victim], M.R., her best friend and Commonwealth witness, E.A., and [Appellant], wherein M.R. expressed her intent to engage in sex with him, engage in BDSM physical contact, and become intoxicated, where such evidence was relevant and admissible to demonstrate [Appellant's] reasonable belief that the sexual conduct with M.R. was consensual?
>
> 2. Did not the trial court err in precluding the testimony of Mr. Bustillo, a friend of Commonwealth witness E.A. and colleague/acquaintance of M.R., that two weeks prior to August 27, 2019, he observed M.R. and E.A. kissing passionately, where that testimony was relevant to the credibility of those two witnesses?
>
> 3. Did not the trial court err in sustaining an objection to defense counsel's argument in closing showing both the motive and illogic of Commonwealth witness E.A.'s testimony about M.R.'s level of intoxication and consent, and by instructing the jury to disregard that argument?
>
> 4. Was not [Appellant's] waiver of his right to remain silent and right to counsel under the Pennsylvania and United States Constitutions invalid as to the portion of his recorded statement to police regarding events involving M.R. in August 2019, where he was not on notice of these events as topics of the interrogation when he waived his *Miranda* rights?

- 16 -

Appellant's Brief, at 8 (numbering added, issues reordered, suggested answers omitted).

Appellant's first claim is that the trial court erred in excluding numerous group text messages exchanged on WhatsApp between Appellant, E.A., and M.R. He argues in his brief that the messages were admissible as non-hearsay evidence, which established Appellant's reasonable belief that M.R. was consenting to the sexual conduct discussed in the messages. *See* Appellant's Brief, at 23-27. He argues further that the trial court erroneously excluded the messages because they were admissible as substantive evidence of M.R.'s consent which did not implicate the prohibition on hearsay. *See id*., at 28-30.

The Commonwealth responds that Appellant did not preserve the above evidentiary issues for appellate review because the grounds for relief raised in his brief differ from the arguments he made before the trial court. In the alternative, the Commonwealth asserts that any error in the trial court's rulings could not have prejudiced Appellant because much of the messages' content was presented at trial.[7]

_____

[7] The trial court, in its 1925(a) opinion, also found the claim to be waived, suggesting that Appellant had mischaracterized how the WhatsApp messages were addressed in its rulings. According to the trial court, it "did not limit or preclude the use of the messages between [Appellant], E.A., and M.R." Trial Court 1925(a) Opinion, 5/21/2024, at 3. The trial court had stated in its pre-trial order that Appellant's motion *in limine* was effectively *granted*, in that defense counsel would be permitted to elicit the content of the text messages from witnesses when appropriate for impeachment purposes. The trial court
*(Footnote Continued Next Page)*

- 17 -

Having reviewed the record, as well as the parties' briefs, we find that Appellant has not preserved for review the specific grounds raised in his first claim, precluding us from reaching the claim's merits.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P 302(a). "[W]here an appellant raises an objection before the trial court on specific grounds, only those grounds are preserved for appeal." **Commonwealth v. Le**, 208 A.3d 960, 977 (Pa. 2019).

Under Pa.R.E. 103, a party may claim error in a ruling to admit or exclude evidence by filing a timely motion *in limine*. **See Commonwealth v. McGriff**, 160 A.3d 863, 866 (Pa. Super. 2017). "Consistent with . . . Pa.R.E. 103(a), a motion *in limine* may preserve an objection for appeal without any need to renew the objection at trial, **but only if the trial court definitively rules on the motion**." **Blumer v. Ford Motor Co.**, 20 A.3d 1222, 1232 (Pa. Super. 2011) (emphasis added, citations omitted). A claim raised in a motion *in limine* may later be waived where the movant abandons it before the court has ruled. **See Commonwealth v. Leaner**, 202 A.3d 749, 765 n.3 (Pa.

---

went on to examine the parties' respective positions on the message's during and at trial, focusing on alleged instances in which Appellant's use of the messages was restricted. **See** Trial Court 1925(a) Opinion, 5/21/2024, at 3-15. The trial court found that, in the few instances when the Commonwealth had objected to the defense's attempted impeachment of a witness with a WhatsApp message, the objections were properly sustained. **See id**. The trial court also noted that defense counsel was otherwise free to impeach witnesses using the content of the messages, much of which was admitted into evidence and considered by the jury. **See id**. Appellant does not identify any of these discrete evidentiary rulings as erroneous or seek appellate review as to the exclusion of any particular text messages.

Super. 2019) (deeming defendant's constitutional speedy trial challenges waived because "[a]lthough [he] suggested in his pre-trial motion that there was a violation of his constitutional rights, he abandoned the claim during the hearing/argument before the trial court.") (Citations omitted).

Appellant's argument here is that the trial court erred in prohibiting defense counsel from presenting 200 pages of WhatsApp messages as substantive evidence of the victims' consent, instead only allowing the messages' content to be read into evidence, in piece-meal fashion, as impeachment material during the cross-examination of E.A. and M.R.

The ostensible purpose of Appellant's motion *in limine*, filed on February 8, 2023, was to obtain a ruling on the admissibility of evidence "Pursuant to Pennsylvania's Rape Shield Statute, 18 Pa.C.S. § 3104." That is, Appellant indicated in the motion that he was seeking to admit "testimony" that could potentially implicate the Rape Shield Statute, ensuring that such evidence would not be statutorily barred:

> **[Appellant] seeks a pre-trial ruling from this Court on the admissibility of testimony that implicates the protections of Pennsylvania's Rape Shield Law, 18 Pa.C.S. § 3104. Specifically, [Appellant] wishes to introduce several messages from a What's App group chat that he, [E.A.], and [M.R.] exchanged between August 25, 2019, two days before the alleged sexual assault, and August 29, 2019, two days after the alleged assault took place.**[2] [Appellant] believes that this evidence is relevant to the issue of [M.R.'s] consent and admissible as it shows the relationship between the parties and their express agreement to consume alcohol and engage in sexual activity on the night in question. [Appellant] also believes that the messages he exchanged with [E.A.] and [M.R.] in the two days following the alleged sexual assault show that no

- 19 -

assault took place. For these reasons, [Appellant] respectfully asks the Court to rule that all of the What's App messages are relevant and admissible.[3]

> [2] [Appellant] believes that the messages are admissible notwithstanding the protections of 18 Pa.C.S. § 3104 because the evidence directly pertains to the events in question, the relationship between the parties, their respective expectations regarding whether they would engage in sexual activity together at the hotel, and whether [M.R.] did in fact consent to the sexual activity. Accordingly, the messages do not relate to prior sexual behavior. Although [Appellant] does not believe that this evidence implicates the Rape Shield Law, he is nonetheless apprising the Court of his intent to introduce this evidence and seeking a pre-trial ruling on this issue in an abundance of caution because the content of the messages does involve the sexual behavior of the complainants. [Appellant] also wishes to make clear that he is not seeking to introduce *any* of the messages in which [M.R.] discusses engaging in sexual intercourse with another individual, "Julian," on the day following the alleged sexual assault as this evidence is not relevant to any of the issues in the instant case.
>
> [3] After consultation with the Assistant District Attorney the defense has not attached the WhatsApp Chats as an exhibit in this motion. Rather, the defense has quoted excerpts of the chats to provide the court with some background as to the relationship between the parties that are expected to testify at trial and their communications leading up to and after the incident in question. Nevertheless, the defense contends to properly rule on the instant motion, the Honorable Court should read the chats in their entirety to properly rule on both their relevancy and admissibility at trial.

Defendant's Motion In Limine Seeking to Admit Evidence Pursuant to Pennsylvania's Rape Shield Statute, 18 Pa.C.S.A. § 3104, 2/8/2023, at 2-3.

At the hearings on Appellant's motion, the trial court understood that Appellant was only seeking to establish the admissibility of the subject

WhatsApp messages through the *impeachment* of E.A. and M.R. ***See*** N.T. Pre-Trial Hearing, 3/24/2023, at 23. This made the admissibility of the messages subject to whether they turned out to be inconsistent with the prospective testimony of those witnesses. And indeed, defense counsel took that very position, agreeing that "there has to be an alleged inconsistency on cross or direct before I can get to [the messages], of course." ***Id.*** That is exactly why, in the order on Appellant's motion *in limine*, the trial court ruled that the "What's App messages may become relevant at trial and used pursuant to Rule 613 of the Pennsylvania Rules of Evidence for impeachment and/or rehabilitation of a witness by both parties." Trial Court Order, 4/27/2023, at para. 4(A).

In Appellant's Reply Brief, he nonetheless argues that he adequately preserved the issue now raised on appeal – the admissibility of 200 pages of WhatsApp messages as non-hearsay evidence of the victims' consent – by raising those same grounds in his motion *in limine*. As shown in the passages of the motion quoted above, Appellant asserted in part that the messages were relevant and admissible to support his defense that M.R. and E.A. consented to having sexual contact with him on the night in question; he had asserted in footnote 2 of the motion that he believed the messages were admissible notwithstanding the Rape Shield Statute because the evidence did not concern the witnesses' prior sexual conduct, but rather related to the

parties' respective expectations for their night at the hotel, and whether M.R. consented to sexual activity with Appellant.

Yet, we cannot find that Appellant made it sufficiently clear to the trial court that he was seeking a pre-trial ruling as to whether he could admit and publish all 200 pages of the subject WhatsApp messages as a single exhibit, regardless of whether they were relevant for impeachment. It was ambiguous in his written motion that Appellant sought a ruling allowing him to do so. But more importantly, in their lengthy discussions at the two hearings on Appellant's motion, the parties' clear consensus was that the redacted version of the WhatsApp messages did not run afoul of the Rape Shield Statute, and that the defense could admit the messages insofar as they could be used to rebut the testimony from the Commonwealth's witnesses. *See* N.T. Hearing, 8/24/2023, at 14-16; 22-23.

By agreeing that the messages' admissibility was contingent on "alleged inconsistency on cross or direct before I can get to them, of course," defense counsel communicated that he was not seeking a ruling from the trial court as to whether the subject messages, all 200 pages, were admissible collectively as a single published exhibit, and for the reasons now advanced on appeal. *Id*., at 23.

Since Appellant led the trial court to believe that no definitive ruling on that discrete issue was being sought, and no definitive ruling on that issue was ever made as a result, Appellant is now foreclosed from raising the issue

at the appellate stage. *See Blumer*, 20 A.3d at 1232 (explaining that a motion *in limine* is alone sufficient to preserve an issue for appeal, "but only if the trial court and definitively rules on the motion.").

Thus, because the trial court did not, in the first instance, rule on the evidentiary issue now raised, and the issue was in any event abandoned at the hearings on Appellant's motion *in limine*, his first claim is waived. *See id.*; *see also Leaner*, 202 A.3d at 765 n.3 (holding that defendant raised an issue in a motion *in limine* but then abandoned the issue for appellate purposes during hearings before the trial court).[8]

Appellant's second claim is that the trial court erred in excluding the testimony of Andres Bustillo Gallardo regarding his observation of M.R. and E.A. kissing each other about two weeks prior to the night in question. In his motion *in limine*, Appellant argued that this evidence was relevant and admissible at trial because it could be used to undermine the credibility of E.A., who had denied that she had ever had any such contact with M.R. prior to their party with Appellant. The trial court ruled that Gallardo's observations

---

[8] To the extent Appellant seeks relief from the exclusion of any individual text messages, such claims are also waived because the issue, as framed in Appellant's brief, does not parse the trial court's various rulings on their admissibility. It is well established that if an appellant's "brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate an appellant's arguments for him." *Commonwealth v. Armolt*, 294 A.3d 364, 377 (Pa. 2023).

were barred under the Rape Shield Statute; the trial court also found that such evidence was irrelevant, and more prejudicial than probative as to any trial issues. *See* Trial Court 1925(a) Opinion, 5/21/2024, at 40-42.

A trial court's evidentiary rulings are subject to abuse of discretion standard of review. *See Commonwealth v. Lawrence*, 313 A.3d 265, 275 (Pa. Super. 2024). This standard applies as to evidentiary rulings made during and prior to trial. *See Moffitt v. Miller*, 302 A.3d 1219, 1224 n.2 (Pa. Super. 2023). "An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather . . . where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Gill*, 206 A.3d 459, 466 (Pa. 2019).

> The Rape Shield Statute provides in pertinent part that
>
> [e]vidence of specific instances of the alleged victim's past sexual conduct, past sexual victimization, allegations of past sexual victimization, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c)[.]"

18 Pa.C.S.A. § 3104(a). The only statutory exception to this rule is that a defendant may present "evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence." *Id*.

In addition to that statutory exception, this Court has also recognized that the Rape Shield Statute will not bar a defendant from presenting

- 24 -

"evidence that negates directly the act of intercourse with which a defendant is charged, evidence demonstrating a witness' bias, or evidence that attacks credibility." ***Commonwealth v. Largaespada***, 184 A.3d 1002, 1006-1007 (Pa. Super. 2018) (citing ***Commonwealth v. Allburn***, 721 A.2d 363, 367 (Pa. Super. 1998)). "Notably, 'evidence tending to directly exculpate the accused by showing that the alleged victim is biased and thus has a motive to lie, fabricate, or seek retribution is admissible at trial.'" ***Largaespada***, 184 A.3d at 1007 (quoting ***Commonwealth v. Guy***, 686 A.2d 397, 400 (Pa. Super. 1996)).

Here, the proffered testimony of Gallardo clearly qualifies as evidence of M.R. and E.A.'s prior sexual acts, making the testimony inadmissible unless an exception to the Rape Shield Statute applies. Appellant argued that Gallardo's testimony was admissible because it could be used to impeach E.A.'s statement to police that she had never kissed or had sexual contact with M.R. until the night of the subject incident.

We find that this claim lacks merit because, as the trial court explained, the proposed basis for the admission of Gallardo's observations would not have been relevant to the issue of M.R.'s consent:

> If the jury heard that EA and M.R. kissed and E.A. did not admit that fact to the [police], EA would have been asked to explain why she was not truthful about that fact. Presumably, she would have testified that she was embarrassed or misunderstood the question, or any number of reasons. Having her questioned and cross[-]examined on this collateral issue would not have helped the jury make the determination of whether [Appellant] was guilty of the charges that were pending against him, particularly in light

- 25 -

of the consistency in his defenses to the charges regarding each victim.

\* \* \* \*

Further, the proffered evidence of a sexual relationship between EA and M.R. did not occur until two weeks before the assault of M.R. at the hotel room, well after E.A.'s graduation from high school. Impeaching the witness on this collateral matter would not have shown that E.A. was biased or lacked credibility about what transpired in the hotel room. It must also be remembered that [Appellant] was found not guilty of all the charges lodged against him with E.A. as the complaining witness.

Further, [Appellant] did not challenge the fact that he had sexual relations with M.R. Instead, he claimed that the contact with her was consensual. Whether E.A. had a sexual relationship with M.R. would have no relevance whatsoever to whether M.R.'s contact with [Appellant] was consensual, nor would it establish that M.R. had a motive to lie about what occurred in the hotel room. [Appellant] counsel thoroughly challenged M.R.'s testimony regarding consent on cross examination. M.R. was confronted with multiple text messages regarding the two days leading up to the incident and the two days following the incident, which included explicit sexual banter, comments regarding oral sex, scores on a BDSM test, filming a porno, and having a threesome, among other things. Defense counsel asserted that all these communications supported the defense that M.R. consented to sexual activity with [Appellant]. It is worth noting that the record does not contain any reference to M.R.'s denial of a sexual relationship with E.A. Thus, without evidence of record regarding a denial, the trial court would not have even reached the question of the use of Mr. Bustillo's testimony as impeachment on a collateral matter would nevertheless not have been relevant to the determination regarding consent by M.R. with [Appellant].

Trial Court 1925(a) Opinion, 5/21/2024, at 41-42.

Appellant's third claim is that the trial court erroneously sustained the Commonwealth's objection to defense counsel's argument in closing

statement that if Appellant were found guilty of sexually assaulting M.R., then E.A. would necessarily be guilty of the same offense.

"[T]he prosecution and the defense alike are afforded wide latitude and may employ oratorical flair in arguing to the jury." *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 110 (Pa. 1998). However, the "arguments of counsel are not evidence." *Commonwealth v. Puksar*, 951 A.2d 267, 263 (Pa. 2008). The arguments advanced by counsel "must be based upon matters in evidence and/or upon any legitimate inferences that may be drawn from the evidence." *Id*. "[T]he trial court must frame the legal issues for the jury and instruct the jury on the applicable law." *Commonwealth v. Meadows*, 787 A.2d 312, 318 (Pa. 2001)*.* The trial court may, at its discretion, limit the scope of counsel's arguments to the jury "to correct a possibly misleading statement of the law." *Commonwealth v. Britton*, 482 A.2d 1294, 1301 (Pa. Super. 1984).

Here, in its closing statement, defense counsel argued that, if Appellant was guilty of sex crimes against E.A. due to her intoxication and lack of consent, then M.R. would have to be guilty of those same offenses:

> If you say that [Appellant] is guilty of sexual assaulting [M.R.], you have to say that [E.A.] is also guilty of it. Have to. Because she, while [M.R.] is drunk, then takes advantage of her friend sexually, and that's just plain silly because she didn't do that. So, she says, [Appellant] got us drunk. [Appellant] didn't get them drunk. They're all doing shots together. [E.A.] and [M.R.] consensually engage. [Appellant] and [M.R.] consensually engage. Seth and [E.A.] consensually engage. And then they joke about it afterwards. Buyer's remorse for sure. Hazy memories for sure. But [E.A.] told Detective Maurer her eyes were wide open

the entire time. That's how you know and that is an uncomfortable, but undeniable truth.

N.T. Trial, 5/22/2023, at 259.

The Commonwealth objected that the argument was improper because E.A. was not on trial, and there was no evidence that E.A. and M.R. had sexual contact with each other at the party in the hotel room. *See id*., at 266. The trial court sustained the objection in part, instructing the jury to disregard the defense's contention that Appellant's guilt as to the charges involving M.R. would have to logically coincide with E.A.'s guilt of those same crimes. The trial court explained that E.A. was not on trial, and that her hypothetical guilt of uncharged offenses was not a matter for the jury to consider. *See id*., at 268-69.

We find that the trial court did not err in giving this cautionary instruction. The trial court correctly clarified to the jury that its role in the case had nothing to do with determining E.A.'s guilt or innocence of any criminal offenses. We note that the defense was still permitted to advance its underlying point that since E.A. and M.R. had in fact consented to sexual contact with each other, it could be inferred that they must have also consented to intercourse with Appellant. Since the trial court merely reminded the jury that only Appellant was on trial, no relief is due on this ground.

Appellant's fourth and final claim is that the trial court erroneously admitted portions of his recorded statements to police regarding his conduct toward M.R. because he had been advised that the interrogation would only

concern allegations in which E.A. was the alleged victim. He argues that the trial court erred in denying his motion to suppress those statements because they were elicited after an involuntary waiver of his *Miranda* rights.

On review of the denial of a motion to suppress evidence, this Court "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Jones***, 121 A.3d 524, 526 (Pa. Super. 2015). All evidence, and reasonable inferences drawn from the evidence, must be construed in the light favorable to the Commonwealth, as the prevailing party. ***See id***. "Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous." ***Id***.

In ***Miranda v. Arizona***, 384 U.S. 436 (1966), the United States Supreme Court held that the Fifth Amendment right against self-incrimination, and the Sixth Amendment right to counsel, require law enforcement to notify the accused of those constitutional rights prior to questioning in a custodial setting. A waiver of *Miranda* rights by the accused must be knowing, intelligent, and voluntary in order to be valid. ***See Commonwealth v. Smith***, 210 A.3d 1050, 1058 (Pa. Super. 2019). Further, and of relevance in the present matter, "[a] valid waiver of *Miranda* rights requires that the suspect have an awareness of the general nature of the transaction giving rise to the investigation." ***Commonwealth v. Dixon***, 379 A.2d 553, 556 (Pa.

1977); *see also Commonwealth v. Johnson*, 160 A.3d 127, 138 (Pa. 2017) (same).

When a defendant challenges the validity of a *Miranda* waiver on that latter ground, the Commonwealth must show, by a preponderance of the evidence, that the defendant was aware of the subject of the police questioning. *See Dixon*, 379 A.2d at 556. The Commonwealth may carry this burden by establishing the "circumstances attending the interrogation, such as the prior statements of the suspect . . . or the fact that interrogation follows hard upon the criminal episode and there is no circumstance lending ambiguity to the direction and purpose of the questioning." *Id*.

In the case at hand, we find that no relief is due on Appellant's *Miranda* claim because a constitutional violation did not occur. The Commonwealth showed by a preponderance of the evidence that Appellant was reasonably aware at the time of his waiver that the subject of the police questioning concerned the events that transpired in a hotel room with E.A. *and* M.R. on the evening of August 27, 2019.

It is true that the police only specifically referenced E.A. as an alleged victim when Appellant waived his *Miranda* rights. However, *Miranda* "does not require that in addition to the various rights enumerated a suspect must be provided with information as to the crime under investigation." *Commonwealth v. Travaglia*, 467 A.2d 288, 293 (Pa. 1983). A *Miranda* waiver may be valid where the "interrogation follows hard upon the criminal

episode and there is no circumstance lending ambiguity to the direction and purpose of the questioning." **Dixon**, 379 A.2d at 556.

Appellant indisputably knew that M.R. was present on the night of the alleged offenses against E.A. He also knew from his own experience, and from his conversations with M.R., that he had gotten her heavily intoxicated at the time they had intercourse. M.R. directly told Appellant in a text message that she had "blacked out" after drinking the alcohol he had supplied her, and that she had not wanted to have sex with him that night. **See** Defendant's Trial Exhibit D-4, 5/17/2023, at p. 159.

Just one day before Appellant's interview with police, E.A. had confronted him with that fact in a recorded telephone call. Appellant responded by acknowledging that M.R. was "part of this," that he did not "know what the f**k happened there," and that he "was intoxicated." Commonwealth Exhibit 33, 5/19/2023, at p.11.

So while the police only referenced allegations of offenses against E.A. when Appellant waived his **Miranda** rights, the interrogation nevertheless "followed hard upon the criminal episode" involving both E.A. and M.R., who Appellant knew to be "part of" the incident being discussed. Thus, the record facts support the trial court's ruling that the Commonwealth carried its burden of showing that Appellant had an awareness of the general nature of the transaction giving rise to the investigation, and that his waiver of **Miranda** rights was valid.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/24/2025